Case number 12, excuse me, case number 14-1242, CBS Corporation et al petitioners versus Federal Communication Commission et al. Mr. Long for the petitioners, Mr. Gossett for the respondent. I'm going to take your questions after the second phase because we're running out of time. Robert Long representing petitioners. The FCC has not met its own standard for releasing highly confidential information and it acted arbitrarily by allowing only five days for both FCC and judicial review of decisions to release confidential information. I'd like to begin if I could with the second issue. Petitioners have a right to both FCC and judicial review of media bureau decisions to disclose confidential information. It's common ground that review is ineffective unless it occurs before disclosure because once the cat is out of the bag, it can't be put back. For at least 15 years, the FCC's policy, therefore, has been to delay release of confidential information until both the full FCC and the court have reviewed the media bureau's decision. Here, the FCC departed from that policy and there are two fatal problems with its order. First, it didn't acknowledge that it was departing from this unbroken 15-year policy. So that alone is a fatal problem. Second, the five-day period is simply unreasonable. The FCC by itself is unlikely to be able to review a media bureau decision in five days. Here, it took 27 days and the decision only came out once a petition for writ of mandamus was pending before this court. So it's predictable that this court will be required to undertake emergency review if it can review the decision at all because media bureau decisions are not typically reviewable by this court. Mr. Long, I want to be sure I understand exactly what you're asking us to do here. I read your brief as primarily focusing on the commission's failure to explain its departure from its prior rule, right? That's certainly one of the fatal problems here, yes. But as an alternative, you're arguing that you're asking us, even setting aside its failure to explain, to invalidate the rule is just arbitrary and capricious? Well, you don't have to go that far. I'm suggesting that's an additional round. Did your brief request that? Well, I think our brief argued that five days is... Was insufficient. Is simply insufficient, yes. So that would be an alternative ground. But we're not asking the court to say how much time is reasonable. I think that's actually suggested in the commission's own rules. They say that they will attempt to rule on these matters within 20 days, and they actually give the parties 10 days to get to the FCC from the media bureau and then 10 days to get to the court from the FCC. So I think there's guidelines in the commission's own rules, but we're not asking the court to get into that. So that's the first problem with the order. The other problem is simply that the FCC did not meet its own fairly demanding standard, persuasive showing standard, for releasing hundreds of thousands of pages of highly confidential documents to hundreds of people. Let me just interrupt you for a second to make sure I understand how the commission's policy, confidentiality policy works. It's virtually all written in the passive. It's hard to know. The regulation says confidential information will not be released routinely. A persuasive showing will be required. It doesn't say who makes... Oh, no, it does say it. It says a persuasive showing as to the reasons for inspection will be required in the request for inspection. So it sounds like the persuasive showing has to come from the entity seeking release or access to the documents. Well... Is that not right? The confidential information policy says right at the beginning that this sets out the commission's general policies for dealing with confidential information. And in the order, I mean, the media bureau itself applied this persuasive showing standard. So I don't think there's any dispute in the case that the persuasive showing standard is the standard that applies. You're absolutely right. It would apply if a party were coming to the commission and asking for them to make the information public or to disclose it to third parties. But it also applies when the commission on its own motion decides to take information that it recognizes as confidential. There's no dispute about that. And disclose it to hundreds of third parties. I don't think that point is in dispute, Your Honor. See, the reason I ask is that the language of the policy, the only thing it... This doesn't in any way hurt your case. It just seems to me the language says the only thing the commission... When it speaks about the commission doing something, it says... It says when it's speaking in the active voice, it says when the commission has to identify... I can see two things that the commission has to do here. Has identified a compelling interest in disclosure. That's one thing. Right? And then it says... It says... It goes on and says the commission... You'll find this in paragraph 8 of the confidential information policy. And I think when you get there, it's not limited, as you say, to simply situations where individuals are coming in and making a request of the commission. It's phrased quite generally to cover all situations. And, again, I mean, the commission in its own order here didn't suggest that it was not subject to the standard. In fact, it admitted that it was. I'm asking you whether the standard is, in fact, higher. The way I read this, it says a commission has to articulate a compelling interest. And then it says... Also, the other phrase it uses is a necessary link in a chain of evidence that will resolve the issue before the commission. Yes, well, I mean, we think the necessary link standard applies. The compelling public interest standard applies. The balancing of interests. We read those as all the way... Those are the ways the commission has fleshed out and given meaning to this. If you're looking at the four corners of the Bureau's order, so the Bureau's order does, in paragraph 16, talk about persuasive showing. It talks about compelling public interest, and it talks about balancing. And then the commission ratifies the Bureau's order. It's interesting it doesn't talk about necessary link, which is another element that comes right out of their own confidential information policy. Right, so that one seems to be the one that's at least not encanted in the order. The rest of the standard that arguably applies to the commission itself, and then the commission, I think you understandably make the argument that the commission has already owned up to that in the Bureau's order, at least the Bureau did. At least those standards are said to be applied. There's only one part of it that you don't find in the order at all, and that's the necessary link part. Right, well, I mean, they're all sort of listed together in paragraph 8 of the confidential information policy, so I think they all apply. And the fact that the media Bureau order really doesn't talk about necessary link, I would say the reason for that is fairly obvious. It's obvious that all these hundreds of thousands of pages of documents that at the time the commission hadn't looked at, now they have looked at it. They presumably know a lot more. They can't say that all of those documents are a necessary link, presumably only, you know, relatively small subset or end up to be a necessary link. So the fact that they left that out, I think, would itself be reason enough to remand this and tell the commission you need to take a closer look before you do this unprecedented thing. Now, what would you say if the way that the necessary link calculus goes, according to the commission, and I'm just hypothesizing here, is not that each individual document is necessary. It's that as a blanket matter, it's necessary to an informed inquiry to make sure that third parties have access to these documents, because otherwise we're not going to make the best informed decision. And that's how we apply the necessary link standard in the context of this case. I don't know that that's actually happened already, but I'm just asking conceptually if that's the way the necessary link standard is applied. Would you take, is it your view that that's just not consistent with the confidential information policy? Well, I mean, the toughest version of it would really be page by page, but you're suggesting a slightly less tough version that I think would require the commission to do more than it did here, a lot more. I mean, just a simple example. They did come up with a few things. They said pricing. They said most favored nation clauses. They said exclusivity clauses. Well, I mean, assume that, okay, those are important. Let's give the FCC that. But they're saying give all the contracts, the whole contracts, all the provisions. Most of the provisions have nothing to do with those three things I mentioned. And all the negotiating documents, which is totally unprecedented. That's a huge universe of highly confidential documents. So at a minimum, if they wanted to say, okay, it's really necessary to know about pricing. Say, okay, so that's, we need to have some disclosure of that. I mean, we think it could actually be done. Would you accept that? Well, I mean, you know, we're not talking about. I can understand your, I had sort of the same question I had for you about this that I did about the five-day issue, which is that can you imagine a situation where the commission could justify disclosing on a limited basis to third parties? I mean, I understand the argument that the commission needs this information. But what you seem to say, your argument here is the commission hasn't met its burden. What could it say that you would be satisfied with? It could meet its own persuasive showing standards. So it would, you know, show why we need to do this unprecedented thing or hopefully something narrower now that they've worked with the documents. Why it's really necessary for commenters to participants to have these documents when almost nobody asked for them. Almost everybody commented and said, we don't think you should disclose any of this. And the three commenters who said they should are competing competitors who have a commercial interest in doing it. And another thing we think they should do is balance it. That's a part of the test that they did address. But the way they balanced was to say we have a protective order. And so nothing bad will happen. But nobody, no company, no government agency with their top secrets would say, well, it's okay to let hundreds of people come in and look at them. Let me ask you a question about the protective order. The protective order, as I read it and understand it, does not prohibit someone from, while it prohibits people from disclosing what they read, it doesn't prevent them from using it. So in other words, if somebody seeks access to this information and signs the protective order, they could in theory be retained by DISH a year later as a consultant on a negotiation with CBS. That's absolutely right. And even as to the year later, I mean, the way the FCC handled that is they said, well, we would expect a cooling off period of perhaps a year. You know, so it's very casual in a situation where the company, there are very few people in my clients' companies who are allowed to know this information. That's how confidential it is. So it's not a perfect solution in their briefs. The FCC sensibly said, look, you know, the protective orders may not be totally effective. So for balancing, we think they need to say, look, we've recognized it's highly sensitive information. The disclosure would be highly damaging. And now we're going to face up to the protective orders may not be perfect with hundreds of people looking at this and the ability to join up with DISH in a year, maybe even less. And so we need to say, is it really worth it to have that harm in order to follow these people? Let me ask a follow-up question. If you object, how are individual, what standards are used to adjudicate these objections? If we object at the FCC? Object to a particular person having access under the protective order. To a particular, well, let me make on that point, there was nothing when this originally came out that the objections had to be only to particular people. That's sort of revisionism, we think, that the FCC has put in afterwards. And we were in a situation where, as Commissioner Pai said in dissent, the Media Bureau seemed to be about to release these documents before even the FCC had looked at it. But I think what the FCC has now said, sort of after the fact, is for objections to specific individuals, assuming we've sort of worked out what the basic ground rules are and what's necessary, balancing and so forth, then basically you would say, well, this particular individual is engaged in business decisions, is not a proper person to look at the documents. So there would be that. And we have 22 of those individuals who are waiting at the FCC. For some reason, the FCC has not ruled on them. And if that five-day provision we started out on stays in effect, somehow that would all have to be looked at by the FCC and this Court if it got here in a five-day period. Okay, thank you. Good morning, Your Honors. David Gossett for the FCC. Petitioners don't seriously contest that the Commission's determination, the material about the contracts between them and the applicants, the applicants and the third-party programmers are relevant to the Commission's analysis here. Right. This is a merger. These are two transactions among five of the seven largest cable and satellite companies. And many of the assertions about benefits from these transactions by the applicants themselves have to do with their buying power in the video programming market. And many of the arguments against the transactions by participants in the Commission's review here have to do, again, with these same contracts. They have to do with arguments. But the question in the case is, why does the Commission have to make it available to third parties to look at? That's the question. Everybody agrees the Commission can get the information. Why does the Commission need it? And as I understand it, the FTC and the Justice Department, which also review mergers, do not require the disclosure of this kind of information. Your Honor, the FTC and the Justice Department are making prosecutorial decisions under the Hartscott-Rodino Act, which specifically precludes public access to the material. Right, but they can make the judgments without. They can make the assessments without. I mean, is there something unique about the way the FCC looks at these things that require them to disclose the information to third parties, whereas the other two agencies don't? The FCC is engaging in informal adjudication, and under the APA and the Communications Act, participants in that proceeding normally get access to all of the relevant material. In fact, the FCC has never not given other participants access. That's confidential information. Yes, and that's precisely why it's being used subject to protective order. Indeed, the petitioners here don't disagree that the Commission has routinely used protective orders in every transaction for the last 20 years, including transactions, including video programming information. They argue that there's more of it here, but they don't deny that we have let exactly the same material be seen subject to protective orders and that that has been the Commission's standard policy. May I quote the confidential information policy statement, which has, I think, been central to a number of the Court's questions here. What we said in that policy statement is, quote, Petitioners to deny generally must be afforded access to all information submitted by licensees that bear upon their applications. We talked also in that policy statement about video programming contracts, and we explained that they are highly confidential, but we explained that such contracts may be made available subject to a protective order in situations where they are relevant to the dispute at hand. So do you deny that the necessary link part of paragraph 8 is applicable here? I think that the Commission made the appropriate determination in paragraph 23 of the reconsideration order where we said that given the highly relevant nature of VPCI, we conclude that the need for interested parties to have access in order to participate meaningfully constitutes a compelling public interest for purposes of that. This is entirely consistent with law and precedent. It's done on a case-by-case basis, as the Commission has always done so. So I'm not completely following the response. Is the response that, yes, the necessary link part of paragraph 8 does apply and the order satisfies it, or is it that you think that necessary link doesn't apply? The confidential information policy statement is a broad statement applying in many different circumstances. What it says about the persuasive showing is that this should be made on a case-by-case basis depending on the circumstances. That's paragraph 16, which also said that one of the reasons why confidential information should be disclosed in some circumstances is, quote, to ensure fairness to other parties in a proceeding. So, I mean, I think the necessary link flows back from the fact that the Commission has balanced the interests of third parties and the interests of the applicants and the interests of fairness and has determined, as it has always determined in every circumstance, that all relevant material in a record should be provided to third-party subjects to protect them. There's never been a – No, but there seems to be, at least semantically, and maybe there's something else going on here that I'm not following, but at the very least, semantically, it seems like there's a delta between relevant and necessary. And what the order says several times, it's relevant, it's highly relevant. The policy says it needs to be a necessary link. Now, I think it's subject to the reading that Judge Tatel had earlier, which is that a lot of this, it's not even clear that the standards necessarily apply to the Commission itself. But we're past that because the Bureau's decision puts the – embraces those standards. And so I think we're in a land where we assume that the necessary link standard does apply. No, I think we're in a world where we assume the persuasive showing standard applies, which is what flows out of the regulation that the Commission uses. And that's what – It says necessary link. And maybe necessary link is part of persuasive showing, but your own policy, which the Bureau's decision assumes applies, requires – and it not only just says necessary link, it says, the Commission has adhered to a policy of not authorizing disclosure of confidential financial information on the mere chance that it might be helpful, but insists upon showing that the information is a necessary link in the chain of evidence. So it seems like that standard either does apply or it doesn't. That standard does not apply. That – Does not. Those cases are about informal rulemakings in the context of an adjudication. I mean, as this Court explained, for example, in the independent U.S. tankers case that we cite, some opportunity for interested parties to be informed of and comment upon the relevant evidence for the agency is necessary. Did you say in your brief that the necessary link – this is news to me, but maybe I missed something – is that necessary link actually doesn't apply to persuasive? I don't think any party discussed the necessary link language. No, their brief – maybe I'm completely misremembered, but I think their brief makes quite an issue of the fact that necessary link is part of the standard, and that's the one part of the standard that the order doesn't and can't. What the order encants, Judge Rinovason, is that the Commission has made the determination on a categorical basis that this information is relevant. That's the necessary link, I guess I would say. The categorically relevant – But isn't there a difference? The video programming information is relevant to the analysis of the issues presented to the Commission. But isn't there a difference between relevant and necessary? And that's what – and maybe one frame of reference is the Quest case. So the Quest case, the Commission said that the information would greatly assist. And then this Court sent it back by saying, well, greatly assist doesn't mean require. And that seems somewhat parallel to saying highly relevant versus necessary. So the Quest case, as I read it, holds that the Commission behaved arbitrarily and capriciously by releasing information in a fashion that was inconsistent with the confidential policy statement. Here, the confidential policy statement says that petitioners to deny get access to material – get access to all information submitted. So there's no inconsistency with – I mean, that's paragraph 33. But it says only if there's a necessary link shown. No, it says – no, it does not. I mean, paragraph 33 of the – I'm looking at the policy itself. And as I said, half of this is written in the past, so who knows what the Commission is talking about. But the one sentence that's active talks about the Commission. And it says the Commission has adhered to a policy of not authorizing disclosure of confidential information on the mere chance that it might be helpful, but only on the showing that the information is necessary link in a chain of evidence. That's what that says. That's paragraph 8. Yes, I have paragraph 8 in front of me. That's what that says. I mean, that – Yeah, I mean – Again, the policy discusses a huge array of circumstances.  Can we just focus on this sentence? Mm-hmm. With that sentence there, focused on the Commission, explain to me how the Commission can make a judgment requiring disclosure without making that essential link finding. How can it do that? I think the Commission has done so here because it is a – Okay, but now we're – see, there's two different questions. Question one is, does it have to do that? I understood from your answers to Judge Srinivasan that it didn't. That's why I asked you about this language. Okay, so let's deal with that issue first. Does it have to make that finding? I think the Commission has made that link. I don't think it's necessary to determine whether it hasn't because, of course, the Commission – I mean, under Schreiber in Section 4J of the Communications Act, the Commission gets to decide how to handle proceedings before it and can do so including on an ad hoc basis in a specific circumstance. Did it violate its own rules? It did not violate any rules. Well, that's the question. We're asking you whether this essential link finding has to be made. If it's in – excuse me. If it's in the policy statement, the Commission has to do it, correct? It's a policy statement, but the policy statement says many things, and it also says specifically that all relevant evidence will be given to participants in third-party adjudication. Relevant, as Judge Srinivasan pointed out, is a very different standard than necessary link. Paragraph 16 of the policy statement explains that what counts as relevant – how you make the persuasive determination is decided on a case-by-case basis because it requires a balancing, and I'm quoting, of the type of proceeding, the relevance of the information, and the nature of the information. Here, the type of proceeding is an adjudication where, again, every time the Commission has engaged in the review of a merger, it has allowed third parties access to all material. Okay, so the next question is you said even if it isn't required, the Commission's made the finding, correct? Yes, Your Honor. What is it? The Commission has made the finding that the video programming information is highly relevant to the issues before the Commission. The Commission is reviewing mergers among buyers of video programming, among five of the seven largest cable and satellite companies. So just to – I'm sorry to keep interrupting, but is this highly – so that presupposes that in your view the highly relevant means the same thing as necessary? For purposes of the evidence in a formal adjudication, yes. And so if we thought that highly – if one were to think that highly relevant did not mean the same thing as necessary and that necessary is required, is there something in the order that would nonetheless get you past the necessary, the presumably applicable necessary criteria? It also uses the word critical. I mean, as this Court explained in SPC, the Commission is fully capable of determining which documents are relevant to its decision-making in an adjudication. It has determined that as a category, the video programming information is relevant to its determination. And frankly, the third-party applicants – the third-party programmers have not really challenged that. I mean, they acknowledge that we need to see the material. Their only question is whether we should also allow the challengers to the transactions to see the material. And that's where – But they say you could see the material by reviewing it at justice, right? We have – we could see the material to review it at justice to determine if it is relevant. So that's what happened in both SPC and in Consumer Federation. We looked at documents to determine whether they were relevant. But once we determined that they were relevant, we brought them into our records and we made – we gave third-parties access to those documents. What about NBCUniversal? What? What about NBCUniversal that's discussed in Petitioners Group? In that also, we determined that certain documents were not relevant and didn't include them in the record, but we determined that other documents were relevant, including video programming contracts, and that material was given to third-parties subject to protective order. That was a very different transaction. That was a vertical transaction between a cable company and a programmer, and so the contracts with other programmers were less relevant to the analysis, and people weren't making arguments about that. There were, on the other hand, contracts between those two companies that were in the record. There were contracts between NBCU and other cable companies that were in the record, and third-parties saw those materials. It's true. These documents with third-party programmers weren't there because no one was making arguments that depended on those documents. Here they are, and every time there have been documents relevant to any question before the commission, we have allowed third-parties to see them subject to protective order. That's what protective orders are for. That's how we interpret Section 309 of the Communications Act, which says that third-parties have a right to participate. It's what the APA says. It's what the policy statement says. The argument that 309 presupposes interested parties get to participate. You have two strands to your argument. One is that this information is highly relevant and will really help us. The other is that unless we give third-parties access to it, we're vulnerable to a challenge, arbitrary and capricious, or a challenge under the statute that interested parties will not have access to information. But one thing that seems odd about this is that the interested parties actually don't ever see the information because it's a representative of the interested party that sees the information. It's their counsel, of course. Yeah, outside counsel or a consultant, which it just seems there seems to be a gap here because if the argument is that the statute requires that interested parties be able to see the information, which makes sense, but then the interested party itself actually never gets to see the information. It's counsel for the interested party that gets to see the information. Then I can certainly understand as a matter of privacy interests and confidentiality why that accommodation is made. I don't dispute that for a moment. But if the explanation is that we need the interested party to see it so that we can get the benefit of the interested party's input and the interested party is the relevant party for purposes of the statute, but that party actually never gets to see it, then isn't there a gap? No, Your Honor, because the actual third-parties get to talk to their counsel. They don't get to see the material. And Judge Wilkins, paragraph 12 of the order specifically says that third-parties may not use the material for any other purpose. But these are extraordinarily complicated contracts. I mean, I'm told that the contract between a programmer and a cable company can be in as many as 50 separate documents. So the participants can talk to their counsel about what to look for. They can explain what the issues that they think will be present are. The counsel can discuss it in broad terms without revealing confidential information. And in the end, this is the way the commission determines to balance these issues. I didn't say that Section 309 mandates this. I said that the commission, based on Section 309 and the APA and the confidential information policy and its long practice of how it reviews these transactions, thinks this is the right way to do it. We want this third-party comment because we think it will be helpful to us. And that determination is one that is the commission's to make under Section 4J. I mean, that's what the Shriver case stands for, is that, yes, confidential information is confidential, but we are the people who should be balancing those interests. And in this circumstance, with these transactions among these major companies, we think the appropriate way to balance that is to allow third parties who are participating and are challenging these transactions to see the material subject to very robust protective orders. If I can turn to the five-day rule for one minute. Go ahead. That's okay. It is not a five-minute rule. Not to fall off according to petitioner. It's a reasonable exercise of the commission's discretion in here. Time is of the essence in merger reviews, and the commission reasonably balanced the interests of objectors who objections have already been denied by the Bureau. No, no, excuse me, since you want to do this quickly. Their argument, they're not challenging it substantively. They're saying the commission failed to explain its change in policy. That's what you need to focus on. They're making both arguments, I think, Your Honor. As to the explanation, the commission, the Bureau clearly explained in paragraph 36 of the reconsideration order why they were making this change. They were making this change because they didn't think it was appropriate for parties to be able to It's important to understand, this objection process has always existed. It was only in these transactions, though, that the third party What in paragraph 36 would tell Reeder that the commission was aware that it was changing its policy? Quote, we hereby amend paragraph 8. Yeah, paragraph 8, right. Paragraph 8 of the protective order is the paragraph that had previously provided that there was So that's it. A stay was longer. That's it. That is the assertion that we are changing. Also, in the initial paragraph of Your point is that, I just want to make sure I understand the commission's position. So when we look for our standard, when we apply our standard in this case, for an agency to change, it needs to be aware of and engage In paragraph 12. Can I just finish my question? Sorry, Your Honor. Okay. If we apply that standard, then your answer to us is that this sentence in paragraph 36 satisfies that standard. We also, in paragraph 1, said we make a minor modification to the order. Okay. Those are the two. Those are places where we said that we were changing our rules. We explained the change, and the change here makes sense. I mean, there's a difference between saying that you're amending the initial order And saying that you're changing commission policy, something that's been consistent in orders across time. A change is a change. A change from what? The reason the change happened here was this is the first time third parties had an opportunity to object to someone having access to material. Before, it was always the applicants who were objecting, and they had every interest in expedition. Here, once third parties were able to object, we saw that they could object. Their only interest is in confidentiality, and their objections could have waylaid the entire processing of these transactions. But the purpose of the objection process is about narrow factual questions, whether someone is involved in confidential decision-making, in negotiating contracts. That question is one that, as intervener NAB says, this is a small bar. People will know. And, in fact, there has never been a court case about one of these. In fact, as far as I'm aware, there has only ever once been even an application for review with the commission filed as to the decision granting or denying someone access to material. This is a non-issue. Then why have five days? Make it five minutes. Five days was what the commission thought was a reasonable period of time, five business days. If the court thinks that it needs seven or 14, I mean, I'm sure we could accommodate that. But the point is the commission decided that it did not see need to stay release of information pending its own review, and that's clearly its own determination. And it thought that five days was adequate for the objector to seek a stay with someone. And if there is a serious question. You're way over time. I'm sorry, Your Honor. You've got it all now. Okay, thank you. Let's see. Did Mr. Long have any time left? Mr. Long, you can take two minutes. Very quickly, Your Honor, on the necessary link point. Again, I'm going back to paragraph eight of the FCC's own confidential information policy. They set out persuasive showing. They set out balancing. They set out compelling public interest. And then this is their own language. Even in such circumstances, that is where there's a compelling public interest in disclosure, the commission does not automatically authorize public release. Rather, the commission has adhered to a policy of not authorizing the disclosure of confidential financial information on the mere chance that it might be helpful, but insists upon showing that the information is a necessary link in a chain of evidence that will resolve an issue before the commission. So we think that's the commission's own policy that it's adhered to. And they didn't show that they've adhered to it here. We don't think they have. So we think that's the simplest reason why the decision to disclose should go back. Mr. Gossett did point out that the order also says critical. I'm sorry, Your Honor. I think Mr. Gossett pointed out that the order also says critical in one portion. Well, you know, and again, that goes even if you gave them, all right, critical, that's sort of close to necessary. I mean, they didn't recite this standard, and I think the fact they omitted it speaks volumes. But even if you said, okay, critical sounds a lot like necessary. I mean, all they referred to, as I said earlier, were a handful of provisions. That does not show that all these hundreds of thousands of pages, every single e-mail about every aspect of every agreement is necessary or critical. It's, you know, at most a small subset. I think, frankly, what is going on here is kind of crowdsourcing, that, you know, and everybody look at this and they'll come up with stuff that the FCC staff may have missed. You know, and ordinarily that can be a good thing, but there's no suggestion that the FCC staff is not capable. And, you know, again, under the FCC's own policy, there are these very strong countervailing interests. Thank you. Thank you. Case is submitted. We'll take a brief recess to let the courtroom clear out here.
judges: Tatel, Srinivasan, Wilkins